# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LONA R. NUNLEY, )<br>)<br>       **Plaintiff,**  )<br>)<br>v.  )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of the Social** )<br>**Security Administration,**[1] )<br>)<br>       **Defendant.**  ) | **Case No. CIV-19-235-SPS** |

## OPINION AND ORDER

The claimant Lona R. Nunley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 28, 218). She completed tenth grade and has no past relevant work (Tr. 20, 36). The claimant alleges that she has been unable to work since an amended onset date of August 20, 2016, due to a neck fusion, problems standing, and swelling in her feet (Tr. 35, 235).

## Procedural History

On April 27, 2016, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 12, 218-23). Her application was denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 1, 2018 (Tr. 12-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with frequent bilateral grasping, fingering, and feeling; and occasional stooping, bilateral overhead reaching, and climbing ladders, ropes, or scaffolds. Additionally, the ALJ found the claimant could perform semi-skilled work where interpersonal contact with supervisors and co-workers is on a superficial work basis and

contact with the general public is occasional (Tr. 16). The ALJ concluded that although the claimant had no past work to return to, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, mail clerk and motel housekeeper (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by failing to: (i) evaluate all of her impairments at step two, (ii) account for all her impairments in formulating the RFC, (iii) discuss evidence contrary to his findings, (iv) properly evaluate the medical opinion evidence, (v) pose a hypothetical to the vocational expert ("VE") that included all her limitations, and (vi) find her disabled under the Medical-Vocational Guidelines (the "Grids"). The Court finds these contentions unpersuasive.

The ALJ determined that the claimant's back degenerative disc disease, affective disorder, substance addiction, hand degenerative joint disease, rheumatoid arthritis, and treatment noncompliance were severe impairments, but that her seizures, onychomycosis, insomnia, gastroesophageal reflux disease ("GERD"), nicotine addiction, elbow and foot degenerative joint disease, chronic hepatitis C, abdominal pain, and leukocytosis were nonsevere (Tr. 14-15). The relevant medical evidence reveals that the claimant was regularly treated at the Choctaw Nation Health Center between May 2014 and May 2018 (Tr. 316-423, 446-567). The claimant's care at this facility generally centered around treatment for cervical, shoulder, arm, and/or hand pain, all of which the claimant attributes to a 2012 neck surgery involving a fusion at C4-T1 and hardware placement (Tr. 316-423, 446-567). Her treatment consisted mainly of medication management, but she had

-4-

osteopathic manipulative therapy between December 2015 and September 2016 (Tr. 316-17, 326-30, 460-62).

The claimant established care with Dr. Nash on March 18, 2015 and reported increased neck pain over "the past couple of weeks," right arm numbness and weakness, and burning pain in her legs (Tr. 347-50). On physical exam, Dr. Nash noted a normal gait, deformed cervical spine, and 4/5 strength in her right arm with a course tremor with movement (Tr. 349). He ordered cervical spine x-rays, the results of which revealed a stable anterior and posterior fusion at C4-F1, no evidence of hardware failure, maintained vertebral alignment, no fractures or subluxations, and unremarkable prevertebral soft tissues (Tr. 350, 391). At a follow up appointment on June 6, 2015, the claimant reported swelling in her feet and left wrist pain (Tr. 343-45). The claimant's physical examination was normal and Dr. Nash diagnosed her with hand joint pain (Tr. 345).

The claimant established care with Dr. Hicks on July 11, 2016 and reported constant pain in her shoulders that radiates to her back and into her arms causing numbness in her fingers and arms (Tr. 472-74). Dr. Hicks found no abnormalities on physical examination (Tr. 474). She encouraged the claimant to continue her osteopathic manipulative therapy and to use heat and her TENS unit more often (Tr. 474). Dr. Hicks also indicated the claimant did not appear to have any motivation to improve her situation and she did not anticipate that the claimant would be able to return to work (Tr. 474).

On December 3, 2016, Dr. Sudduth performed a physical consultative examination of the claimant (Tr. 437-40). He observed that the claimant was able to lift, carry, and handle objects and had no difficulty getting up and down from the exam table (Tr. 439).

-5-

On physical examination, Dr. Sudduth found, *inter alia,* full strength in all assessed muscle groups, intact sensation, moderate to severe decreased range of motion in the claimant's cervical spine, and mild to moderate decreased range of motion in her lumbar spine with pain on assessment (Tr. 440).

The claimant established care with Dr. Nghe on January 3, 2017 (Tr. 451-53). Dr. Nghe found tenderness over the claimant's surgical incision and noted side bending induced pain bilaterally (Tr. 452). He also ordered a cervical MRI, but the record does not contain evidence of a cervical MRI (Tr. 452).

Dr. Denke, a rheumatologist, examined the claimant on May 11, 2018 (Tr. 553-57). He found good range of motion in the claimant's shoulders with pain on external rotation and good range of motion in her elbows, hips, knees, and ankles without pain or swelling (Tr. 555). As to the claimant's neck, Dr. Denke noted the following: "Loss 30-40 degrees anterior flexion. Probably 90% rotation. Complaints of pain on motion." (Tr. 555). He found swelling in some but not all the claimant's fingers and noted some tenderness in the claimant's feet (Tr. 555). Dr. Denke indicated that the clinical picture suggested "inflammatory arthritis may well be rheumatoid arthritis although not definite."

On May 23, 2017, state agency physician Dr. Lammers completed a physical RFC assessment wherein she concluded that the claimant could perform light work with occasional climbing ladders/ropes/scaffolds, crawling, and overhead reaching (Tr. 110-11).

In his written opinion at step four, the ALJ thoroughly discussed the medical evidence, including the claimant's treatment for pain in her neck, shoulders, arms, hands, and feet; the imaging of her cervical spine and hands; and her treatment for chronic pain

(Tr. 16-20).  In discussing the opinion evidence, the ALJ gave partial weight to Dr. Sudduth's consultative opinion because subsequent examinations indicated the claimant had a steady gait and her cervical spine examinations improved (Tr. 19). The ALJ gave partial weight to the state agency physician's and psychologist's opinions, finding additional limitations were warranted in light of the claimant's testimony (Tr. 19-20).

The claimant first contends that the ALJ erred at step two by failing to discuss the severity of her neck impairment, headaches, and shoulder pain.  This Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008).  Thus, even assuming *arguendo* that the ALJ erred by not finding these impairments severe, such error was harmless because he found the claimant had other severe impairments at step two.

The claimant next asserts that the ALJ erred in evaluating the medical source opinion evidence from treating physicians Dr. Denke, Dr. Hicks, and Dr. Nghe, and consultative physician Dr. Sudduth.  "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  The pertinent factors include the following: (i) the length of the treatment relationship and

the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

The claimant's specific complaint as to Dr. Denke's exam is that the ALJ engaged in improper "picking and choosing" when he referenced some but not all of Dr. Denke's examination findings.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").  She asserts that the ALJ ignored his findings as to her reduced range of motion in her neck but this is not borne out by the record.  Although the ALJ did not specifically discuss Dr. Denke's finding of reduced cervical range of motion, the ALJ did specifically discuss similar findings from other physicians (Tr. 18-19).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10.  Here, the ALJ did not recite every one of Dr. Denke's examination findings, but he clearly considered his exam and the claimant's reduced range of motion (Tr. 18-19).

The claimant correctly points out that the ALJ did not mention or discuss Dr. Hicks' statement that she did not anticipate that the claimant would be able to return to work and

-8-

Dr. Nhge's notation that he filled out paperwork for her "[C]hoctaw disability." However, the claimant does not point to any diagnosis or limitations Dr. Hicks or Dr. Nghe identified that the ALJ did not adopt. Both physicians evaluated the claimant's neck pain and encouraged her to continue her current treatment, and the ALJ discussed the claimant's neck pain at length in formulating the RFC. (Tr. 456, 474). Given that the ALJ did not reject any impairments or limitations found by Dr. Hicks or Dr. Nghe, remand is not warranted. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless where the opinion was generally consistent with the ALJ's residual functional capacity findings). Furthermore, the ALJ is not required to give controlling weight or to attach any special significance to statements that the claimant was unable to work because the determination of disability is reserved for the Commissioner. *See* Soc. Sec. Reg. 96-5p, 1996 WL 374183, at *2; *see also Olson v. Berryhill*, 689 F. Appx. 628, 631 (10th Cir. 2017) (unpublished) ("[A] treating physician may not render opinions that are essentially administrative findings . . . dispositive of a case such as whether the claimant is disabled." (internal quotation omitted).

    The claimant also takes issue with the ALJ's decision to give partial weight to Dr. Sudduth's consultative opinion based in part on his finding that the claimant's cervical examinations improved at subsequent exams. Even assuming *arguendo* that the ALJ did incorrectly conclude that the claimant's cervical exams improved, any such error was harmless in light of his thorough discussion of Dr. Sudduth's examination findings and his RFC determination that is not inconsistent with Dr. Sudduth's exam. *See, e. g., Mays v.*

*Colvin,* 739 F.3d 569, 578-79 (10th Cir. 2014), *quoting Keyes-Zachary,* 695 F.3d at 1163 ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. In that case, the claimant is not prejudiced 'because giving greater weight to [the opinion] would not have helped her.'"). Furthermore, while Dr. Sudduth made numerous clinical observations, he did not make a diagnosis and he did not indicate what, if any, functional limitations resulted from his findings. *See, e. g., Moua v. Colvin*, 541 Fed. Appx. 794, 797-98 (10th Cir. 2013) ("Dr. Bhakta's treatment notes do not offer any medical opinions concerning [the claimant's] abilities or limitations . . . Thus, there was no pertinent medical opinion for the ALJ to weigh."); 20 C.F.R. § 416.927(a)(1) (defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical or mental restrictions").

The claimant next contends that the ALJ erred in his RFC assessment at step four because the evidence suggests a more restrictive RFC and the ALJ failed to account for limitations related to her neck, shoulders, and arms. The Court finds that the ALJ did not, however, commit any error in his analysis. As discussed above, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill,* 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative,

medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  The only suggested limitations in the medical record were those stated by the state agency physicians and psychologists, which the ALJ adopted, *added more restrictive* limitations of his own, *and still concluded* that the claimant could perform a limited range of light work.

The claimant's remaining arguments relate to the ALJ's findings at step five.  At step five, the Commissioner has the burden to show that, given a claimant's background and RFC, the claimant can perform other work that exists in significant numbers in the national economy.  *See* 20 C.F.R. § 416.920(g).  *See also Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (citation omitted).  The ALJ can satisfy this burden with a VE's testimony.  20 C.F.R. § 416.966(e).  To constitute "substantial evidence," the ALJ must present the VE with all of a claimant's physical and mental impairments before the VE determines whether sufficient jobs exist in the national economy.  *Hargis v. Sullivan*, 945 F.2d 1482, 1491-92 (10th Cir. 1991).  The ALJ may elicit testimony through hypothetical questions that "relate with precision all of a claimant's impairments . . . ."  *Id.* at 1492 (quotation omitted).  When the ALJ's RFC findings are "adequately reflected in the ALJ's hypothetical inquiries to the [VE], the expert's testimony provide[s] a proper basis for adverse determination of [the] case."  *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993).

The claimant asserts that the ALJ erred at step five by failing to find her disabled through application of the Grids.  Contrary to the claimant's assertion, Rule 202.10 is the

-11-

applicable rule in this case. This rule directs a decision of "not disabled" for a claimant who is between the ages of fifty and fifty-four (defined as "closely approaching advanced age"), has been limited to light work, has a limited education or less, and whose past work experience is unskilled or none. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, §202.00, Table No. 2, Rule 202.10. To the extent the claimant contends that the ALJ erred by not applying the sedentary exertional table, her argument fails because the ALJ's RFC for a limited range of light work is supported by substantial evidence as explained herein. Accordingly, application of the sedentary table is inappropriate in this case and the ALJ did not err by failing to find the claimant disabled through such rules.

Finally, the claimant contends that the ALJ failed to include all her limitations in the hypothetical question he posed to the VE. Specifically, she asserts that the hypothetical question should have included further limitations for her neck, shoulders, arms, and hands. However, as set forth above, the ALJ *did* include reaching and manipulative limitations in the RFC and he thoroughly discussed the evidence related to the claimant's neck, shoulders, arms, and hands. Furthermore, the claimant does not point to any evidence supporting the additional limitations she claims. Accordingly, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question posed to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). *See also Adams v. Colvin*, 553 Fed. Appx. 811, 815

(10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls*, 206 F.3d at 1372.

When all the evidence is taken into account, the Court is satisfied that the ALJ's conclusion that the claimant could perform the assigned RFC is supported by substantial evidence. The ALJ specifically noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category.'"), *quoting Howard* 379 F.3d at 949. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

-14-

**DATED** this 10th day of November, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**